# EXHIBIT A

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 2 of 60

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------ X

CHARLES KOBRIN, MATTHEW
ADOMAVICIUS, CHERYL AMES,
GLORIA ANDERSON, HELEN ANSARI,
MICHAEL ARAKELIAN, MAUREEN
BECKER, NICHOLAS BECKER, THOMAS
BENCIVENGO, ROBERT BLANCHET,
CLIFTON BOSWORTH, DANIEL
BROOKS, JUNE BROWN, TERRENCE
BROWN, RALPH CAFASSO, CARMINE
CARATURO, JAMES CASSIDY, CRAIG
CIOFFI, BRIAN CLARK, ALLEN COHEN,
DALE COHEN, MITCHELL COHEN,
RODNEY COLEMAN, RONALD
CONCESSI, RAMON CRUZ, RICARDO
CUADRA, JOHN DAUM, MICHAEL
DEJESUS, MATTHEW DELGAUDIO,
RICHARD DELGROSSO, RICHARD
DOBBINS, EDWARD DOIN, JASON
DRESDNER, JAMES EBENAU, MICHAEL
EDWARDS, OMAR ESTRADA
GONZALEZ, ANTHONY FAZIO, DAVID
FISHER, JAMIE FODOR, MOLLY
FONTANA; DEBORAH FORINGER-
MERKLE, MITCHELL FRASIER,
CHELSEA FYRE, ALLAN GALLAWAY,
FELICE GAMBINO, LOUIS GARDINER,
FRANK GEORGE, FRANK GERACE,
JOSEPH GILLESPIE, GREGORY
GODFREY, JOANNE GOLDING,
MICHAEL HALAVIK, MATTHEW
HEADY, DAVID HELFRICH, AARON
HERRICK, KISHON HICKMAN, JOANNE
IOLONARDI, KAMELL JENKINS,
BARBARA JONES, CAROLE KANNER,
BARBARA KELLY, DAVID KNIGHTS,
MARY KOURY, SUSAN KRANTZ, JOHN
KRAUSE, JAMES KROM, BRUCE
KUSHNICK, TARA LALOR, MICHELE
LAMANTIA, ANTHONY LEE, MICHAEL
LEGENE, RICHARD LEIBOWITZ,
ROBERT LIPPMAN, ALICE LYNADY,
HALINA MALINOWSKI, PETER
MANFREDI, MICHELE MAPES,
MICHAEL MARKOWSKI, DEBRA

INDEX NO. _____/2025

**SUMMONS**

Venue is designated pursuant to
CPLR § 503(a) & (c) in that the
causes of action occurred in this
county.

2:25-cv-10297-RMG       Date Filed 07/24/25      Entry Number 1-1      Page 3 of 60

MARTIN, DAVID MCALLISTER, STEVEN
MCCARVILLE, RONALD MCGEE, JAMES
MCKIERNAN, RICHARD MELI,
HERMANN MENDEZ, JAMES METZGER,
MICHAEL MILLER, CHRISTOPHER
MILLER, MICHAEL MOLINELLI, and
GARY MUELLER,

     *Plaintiffs,*

-*against*-

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co.);
AGC CHEMICAL AMERICAS, INC.;
AGC, INC. (f/k/a Asahi Glass Co., Ltd.);
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT CO.;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CHEMICALS INCORPORATED;
CLARIANT CORPORATION;
CORTEVA, INC.;
DEEPWATER CHEMICALS, INC.;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
E.I. DU PONT DE NEMOURS AND
COMPANY;
NATION FORD CHEMICAL COMPANY;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS, LP; AND
JOHN DOE DEFENDANTS 1-49,

     *Defendants.*

---------------------------------------------X

To the above-named Defendant:

     You are hereby summoned to answer the Complaint in this action, and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of

Appearance on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons,

exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:   New York, New York
         June 5, 2025

                                        Respectfully submitted,

                                        By: */s/ Rebecca Currier*
                                        **BARON & BUDD, P.C.**
                                        Rebecca Currier
                                        NY Attorney Registration No.: 4950606
                                        rcurrier@baronbudd.com
                                        Holly Werkema (TX Bar No. 24081202)
                                        *(Pro Hac Vice Forthcoming)*
                                        hwerkema@baronbudd.com
                                        3102 Oak Lawn Dr., Ste. 1100
                                        Dallas, Texas 75219
                                        Telephone: (214) 521-3605
                                        Fax: (214) 279-9915

                                        **COSSICH, SUMICH, PARSIOLA
                                        & TAYLOR, LLC**
                                        Philip F. Cossich, Jr. (LA Bar No. 1788)
                                        *(Pro Hac Vice Forthcoming)*
                                        pcossich@cossichlaw.com
                                        Christina M. Cossich (LA Bar No. 32407)
                                        *(Pro Hac Vice Forthcoming)*
                                        ccossich@cossichlaw.com
                                        8397 Highway 23, Suite 100
                                        Belle Chasse, LA 70037
                                        Telephone: (504) 394-9000

                                        *Attorneys for Plaintiff*

To:

THE 3M COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington DE 19801-1120

3

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 5 of 60

AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

AGC, Inc. (f/k/a Asahi Glass Co., Ltd.)
1-5-1, Marunouchi, Chiyoda-ku,
Tokyo 100-8405 Japan

ARCHROMA U.S. INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

ARKEMA INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington DE 19808-1674

BASF CORPORATION
c/o CT Corporation System
28 Liberty Street
New York, NY 10005

BUCKEYE FIRE EQUIPMENT COMPANY
110 Kings Road
Kings Mountain NC 28086-2090

CHEMDESIGN PRODUCTS INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMGUARD INC.
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, New Castle, DE, 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CLARIANT CORPORATION
c/o Corporation Service Company

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 6 of 60

251 Little Falls Drive
Wilmington DE 19808-1674

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DEEPWATER CHEMICALS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DUPONT DE NEMOURS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

EIDP, INC. f/k/a E. I. DUPONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

THE CHEMOURS COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street

5

Wilmington, DE 19801

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------- X
CHARLES KOBRIN, MATTHEW
ADOMAVICIUS, CHERYL AMES,
GLORIA ANDERSON, HELEN ANSARI,
MICHAEL ARAKELIAN, MAUREEN
BECKER, NICHOLAS BECKER, THOMAS
BENCIVENGO, ROBERT BLANCHET,
CLIFTON BOSWORTH, DANIEL
BROOKS, JUNE BROWN, TERRENCE
BROWN, RALPH CAFASSO, CARMINE
CARATURO, JAMES CASSIDY, CRAIG
CIOFFI, BRIAN CLARK, ALLEN COHEN,
DALE COHEN, MITCHELL COHEN,
RODNEY COLEMAN, RONALD
CONCESSI, RAMON CRUZ, RICARDO
CUADRA, JOHN DAUM, MICHAEL
DEJESUS, MATTHEW DELGAUDIO,
RICHARD DELGROSSO, RICHARD
DOBBINS, EDWARD DOIN, JASON
DRESDNER, JAMES EBENAU, MICHAEL
EDWARDS, OMAR ESTRADA
GONZALEZ, ANTHONY FAZIO, DAVID
FISHER, JAMIE FODOR, MOLLY
FONTANA; DEBORAH FORINGER-
MERKLE, MITCHELL FRASIER,
CHELSEA FYRE, ALLAN GALLAWAY,
FELICE GAMBINO, LOUIS GARDINER,
FRANK GEORGE, FRANK GERACE,
JOSEPH GILLESPIE, GREGORY
GODFREY, JOANNE GOLDING,
MICHAEL HALAVIK, MATTHEW
HEADY, DAVID HELFRICH, AARON
HERRICK, KISHON HICKMAN, JOANNE
IOLONARDI, KAMELL JENKINS,
BARBARA JONES, CAROLE KANNER,
BARBARA KELLY, DAVID KNIGHTS,
MARY KOURY, SUSAN KRANTZ, JOHN
KRAUSE, JAMES KROM, BRUCE
KUSHNICK, TARA LALOR, MICHELE
LAMANTIA, ANTHONY LEE, MICHAEL
LEGENE, RICHARD LEIBOWITZ,
ROBERT LIPPMAN, ALICE LYNADY,
HALINA MALINOWSKI, PETER
MANFREDI, MICHELE MAPES,
MICHAEL MARKOWSKI, DEBRA

INDEX NO. _____/2025

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

Trial by jury is desired in the County of
New York.

Venue is designated pursuant to
CPLR § 503(a) & (c) in that the
causes of action occurred in this
county.

MARTIN, DAVID MCALLISTER, STEVEN
MCCARVILLE, RONALD MCGEE, JAMES
MCKIERNAN, RICHARD MELI,
HERMANN MENDEZ, JAMES METZGER,
MICHAEL MILLER, CHRISTOPHER
MILLER, MICHAEL MOLINELLI, and
GARY MUELLER,

      *Plaintiffs,*

-*against*-

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co.);
AGC CHEMICAL AMERICAS, INC.;
AGC, INC. (f/k/a Asahi Glass Co., Ltd.);
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT CO.;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CHEMICALS INCORPORATED;
CLARIANT CORPORATION;
CORTEVA, INC.;
DEEPWATER CHEMICALS, INC.;
DUPONT DE NEMOURS, INC.;
DYNAX CORPORATION;
E.I. DU PONT DE NEMOURS AND
COMPANY;
NATION FORD CHEMICAL COMPANY;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS, LP; AND
JOHN DOE DEFENDANTS 1-49,

      *Defendants.*
-------------------------------------------X

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

     Plaintiffs Charles Kobrin, Matthew Adomavicius, Cheryl Ames, Gloria Anderson, Helen

Ansari, Michael Arakelian, Maureen Becker, Nicholas Becker, Thomas Bencivengo, Robert

Blanchet, Clifton Bosworth, Daniel Brooks, June Brown, Terrence Brown, Ralph Cafasso, Carmine

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 10 of 60

Caraturo, James Cassidy, Craig Cioffi, Brian Clark, Allen Cohen, Dale Cohen, Mitchell Cohen,

Rodney Coleman, Ronald Concessi, Ramon Cruz, Ricardo Cuadra, John Daum, Michael Dejesus,

Matthew Delgaudio, Richard DelGrosso, Richard Dobbins, Edward Doin, Jason Dresdner, James

Ebenau, Michael Edwards, Omar Estrada Gonzalez, Anthony Fazio, David Fisher, Jamie Fodor,

Molly Fontana, Deborah Foringer-Merkle, Mitchell Frasier, Chelsea Fyre, Allan Gallaway, Felice

Gambino, Louis Gardiner, Frank George, Frank Gerace, Joseph Gillespie, Gregory Godfrey, Joanne

Golding, Michael Halavik, Matthew Heady, David Helfrich, Aaron Herrick, Kishon Hickman,

Joanne Iolonardi, Kamell Jenkins, Barbara Jones, Carole Kanner, Barbara Kelly, David Knights,

Mary Koury, Susan Krantz, John Krause, James Krom, Bruce Kushnick, Tara Lalor, Michele

LaMantia, Anthony Lee, Michael Legene, Richard Leibowitz, Robert Lippman, Alice Lynady,

Halina Malinowski, Peter Manfredi, Michele Mapes, Michael Markowski, Debra Martin, David

McAllister, Steven McCarville, Ronald McGee, James McKiernan, Richard Meli, Hermann Mendez,

James Metzger, Michael Miller, Christopher Miller, Michael Molinelli, and Gary Mueller, by and

through undersigned counsel, bring this action against Defendants 3M Company (f/k/a Minnesota

Mining and Manufacturing, Co.), AGC Chemical Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co.,

Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company,

Chemdesign Products, Inc., Chemguard, Inc., Chemicals Incorporated, Clariant Corporation,

Corteva, Inc., Deepwater Chemicals, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du

Pont de Nemours and Company, Nation Ford Chemical Company, The Chemours Company, The

Chemours Company FC, LLC, and Tyco Fire Products, LP (individually and as successor-in-interest

to The Ansul Company).  Plaintiffs hereby allege, upon information and belief, as follows:

## I.     SUMMARY OF THE CASE

1.     Plaintiffs bring this action against Defendants who manufactured aqueous film-

forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The

2:25-cv-10297-RMG          Date Filed 07/24/25          Entry Number 1-1          Page 11 of 60

AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

5.      This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 12 of 60

environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.      Due to the widespread PFAS contamination caused by Defendants' Fluorosurfectant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.      Plaintiffs, as residents and those who visited, worked, or resided in the contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.     Plaintiffs file this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their injuries; (2) compensation for physical pain and suffering; (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society; (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.      PARTIES

### A. **Plaintiffs**

12.     Plaintiff Charles Kobrin is a citizen and resident of New York, New York in New York County. From approximately 1968 to 2025, Plaintiff Charles Kobrin was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Fresh Meadows, New York; Pulaski County, Missouri; and Jersey City, New Jersey.

13.     On or about July 2023, Plaintiff Charles Kobrin was diagnosed with kidney cancer in New York, New York and subsequently underwent a right nephrectomy.

14.     Plaintiff Matthew Adomavicius is a citizen and resident of Punta Gorda, Florida. From approximately 1979 to 2002, Plaintiff Matthew Adomavicius was regularly exposed to PFAS through drinking water at residences and schools in Commack, New York.

15.     On or about December 2006, Plaintiff Matthew Adomavicius was diagnosed with testicular cancer in West Palm Beach, Florida and subsequently underwent a left orchiectomy and chemotherapy treatments.

16.     Plaintiff Cheryl Ames is a citizen and resident of Potsdam, New York. From approximately 1989 to 2025, Plaintiff Cheryl Ames was regularly exposed to PFAS through drinking water at residences in Potsdam, New York and Canton, New York.

17.     On or about November 1, 2023, Plaintiff Cheryl Ames was diagnosed with kidney cancer in Buffalo, New York and subsequently underwent a right nephrectomy. On or about 2023, Plaintiff Cheryl Ames was also diagnosed with thyroid disease in Buffalo, New York.

18.     Plaintiff Gloria Anderson is a citizen and resident of New York, New York. From approximately 1987 to 2018, Plaintiff Gloria Anderson was regularly exposed to PFAS through drinking water at residences in New York, New York.

19.     On or about 2021, Plaintiff Gloria Anderson was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy. On or about January 2025, Plaintiff Gloria Anderson was again diagnosed with kidney cancer in New York, New York.

20.     Plaintiff Helen Ansari is a citizen and resident of North Salem, New York. From approximately 1987 to 2025, Plaintiff Helen Ansari was regularly exposed to PFAS through drinking water at residences and workplaces in North Salem, New York; Bristol, Connecticut; Mount Kisco, New York; Bedford Hills, New York; Camp Springs, Maryland; and Washington, District of Columbia.

21.     On or about September 2024, Plaintiff Helen Ansari was diagnosed with kidney cancer in White Plains, New York and subsequently underwent a right partial nephrectomy.

22.     Plaintiff Michael Arakelian is a citizen and resident of Levittown, New York. From approximately 1976 to 2025, Plaintiff Michael Arakelian was regularly exposed to PFAS through drinking water at residences and workplaces in Melville, New York; Levittown, New York; Margaretville, New York; Sunrise, Florida; Delray Beach, Florida; and Flushing, New York.

23.     On or about December 2024, Plaintiff Michael Arakelian was diagnosed with kidney cancer in Mineola, New York and subsequently underwent chemotherapy treatments.

24.     Plaintiff Maureen Becker is a citizen and resident of Fairport, New York. From approximately 1967 to 2025, Plaintiff Maureen Becker was regularly exposed to PFAS through drinking water at residences and workplaces in Fairport, New York; East Rochester, New York; Rochester, New York; and Victor, New York.

25.     On or about 2010, Plaintiff Maureen Becker was diagnosed with kidney cancer in Rochester, New York and subsequently underwent a right partial nephrectomy.

26.     Plaintiff Nicholas Becker is a citizen and resident of Fulton, New York. From approximately 2001 to 2025, Plaintiff Nicholas Becker was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Fulton, New York and Cicero, New York.

27.     On or about March 13, 2021, Plaintiff Nicholas Becker was diagnosed with testicular cancer in Syracuse, New York and subsequently underwent a right orchiectomy.

28.     Plaintiff Thomas Bencivengo is a citizen and resident of Howard Beach, New York. From approximately 1994 to 2025, Plaintiff Thomas Bencivengo was regularly exposed to PFAS through drinking water at residences and schools in Howard Beach, New York; Astoria, New York; and Jamaica, New York.

29.     On or about September 2023, Plaintiff Thomas Bencivengo was diagnosed with testicular cancer in New York, New York and subsequently underwent a bilateral orchiectomy.

30.     Plaintiff Robert Blanchet is a citizen and resident of Cazenovia, New York. From approximately 1980 to 2011, Plaintiff Robert Blanchet was regularly exposed to PFAS through drinking water at residences in Rochester, New York; Clifton Park, New York; and Brockport, New York.

31.     On or about 2012, Plaintiff Robert Blanchet was diagnosed with kidney cancer in Albany, New York and subsequently underwent a right nephrectomy and immunotherapy. On or about 2014, Plaintiff Robert Blanchet was diagnosed with thyroid disease in Albany, New York.

32.     Plaintiff Clifton Bosworth is a citizen and resident of Saranac, New York. From approximately 1966 to 2016, Plaintiff Clifton Bosworth was regularly exposed to PFAS through drinking water at residences and workplaces in Plattsburgh, New York and Dannemora, New York.

33.     On or about August 2024, Plaintiff Clifton Bosworth was diagnosed with kidney cancer in Burlington, Vermont and subsequently underwent a right nephrectomy.

34.     Plaintiff Daniel Brooks is a citizen and resident of Wynantskill, New York. From approximately 1996 to 2025, Plaintiff Daniel Brooks was regularly exposed to PFAS through drinking water at residences in Wynantskill, New York; Nassau, New York; Schenectady, New York; Albany, New York; Canton, New York; and Ogdensburg, New York.

35.     On or about January 2020, Plaintiff Daniel Brooks was diagnosed with testicular cancer in Albany, New York and subsequently underwent a left orchiectomy.

36.     Plaintiff June Brown is a citizen and resident of Oriskany Falls, New York. From approximately 1986 to 2024, Plaintiff June Brown was regularly exposed to PFAS through drinking water at residences and workplaces in Utica, New York; Fall River, Massachusetts; and Rome, New York.

37.     On or about July 2009, Plaintiff June Brown was diagnosed with kidney cancer in Rochester, New York and subsequently underwent a right partial nephrectomy. On or about 1997, Plaintiff June Brown was diagnosed with thyroid disease in Clinton, New York.

38.     Plaintiff Terrence Brown is a citizen and resident of Buffalo, New York. From approximately 1972 to 2020, Plaintiff Terrence Brown was regularly exposed to PFAS through drinking water at residences in Buffalo, New York.

39.     On or about 2016, Plaintiff Terrence Brown was diagnosed with kidney cancer in Cheektowaga, New York and subsequently underwent a biopsy.

40.     Plaintiff Ralph Cafasso is a citizen and resident of Ancram, New York. From approximately 1967 to 2005, Plaintiff Ralph Cafasso was regularly exposed to PFAS through drinking water at residences in College Point, New York; Whitestone, New York; and Flushing, New York.

41.     On or about 2011, Ralph Cafasso was diagnosed with testicular cancer in New Hyde Park, New York and subsequently underwent a right orchiectomy and radiation treatments.

42.     Plaintiff Carmine Caraturo is a citizen and resident of Centereach, New York. From approximately 1960 to 2025, Plaintiff Carmine Caraturo was regularly exposed to PFAS through drinking water at residences in Centereach, New York; Port Jefferson Station, New York; Lindenhurst, New York; Deer Park, New York; Syosset, New York; and Brooklyn, New York.

43.     On or about October 2023, Plaintiff Carmine Caraturo was diagnosed with kidney cancer in Mineola, New York and subsequently underwent a right partial nephrectomy and immunotherapy treatments.

44.     Plaintiff James Cassidy is a citizen and resident of Flushing, New York. From approximately 1987 to 2013, Plaintiff James Cassidy was regularly exposed to PFAS through

15

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 17 of 60

drinking water at residences and workplaces in Woodside, New York; Brooklyn, New York; and New York, New York.

45.     On or about August 2013, Plaintiff James Cassidy was diagnosed with kidney cancer in Flushing, New York and subsequently underwent a right partial nephrectomy. On or about 2015, Plaintiff James Cassidy was diagnosed with ulcerative colitis in New York, New York. On or about 2023, Plaintiff James Cassidy was diagnosed with thyroid disease in Flushing, New York.

46.     Plaintiff Craig Cioffi is a citizen and resident of Albany, New York. From approximately 1974 to 2025, Plaintiff Craig Cioffi was regularly exposed to PFAS through drinking water at residences in Albany, New York; Nassau, New York; and Rensselaer, New York.

47.     On or about August 2024, Plaintiff Craig Cioffi was diagnosed with kidney cancer in New York, New York and subsequently underwent a right partial nephrectomy.

48.     Plaintiff Brian Clark is a citizen and resident of Ballston Spa, New York. From approximately 1992 to 2023, Plaintiff Brian Clark was regularly exposed to PFAS through drinking water at residences and workplaces in Ballston Spa, New York and Schenectady, New York.

49.     On or about February 28, 2023, Plaintiff Brian Clark was diagnosed with testicular cancer in Saratoga Springs, New York and subsequently underwent a right orchiectomy.

50.     Plaintiff Allen Cohen is a citizen and resident of New York, New York. From approximately 1967 to 2002, Plaintiff Allen Cohen was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Los Angeles, California; Miami, Florida; Miami Beach, Florida; and Plainview, New York.

51.     On or about August 2021, Plaintiff Allen Cohen was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy.

52.     Plaintiff Dale Cohen is a citizen and resident of Massapequa, New York. From approximately 1973 to 2025, Plaintiff Dale Cohen was regularly exposed to PFAS through drinking water at residences and workplaces in Woodbury, New York and North Massapequa, New York.

53.     On or about January 1, 2016, Plaintiff Dale Cohen was diagnosed with kidney cancer in Mineola, New York and subsequently underwent a tumor removal procedure. On or about January 1, 2023, Plaintiff Dale Cohen was diagnosed with kidney cancer in Garden City, New York and subsequently underwent a left partial nephrectomy.

54.     Plaintiff Mitchell Cohen is a citizen and resident of Glen Cove, New York. From approximately 1978 to 2025, Plaintiff Mitchell Cohen was regularly exposed to PFAS through drinking water at residences and workplaces in Glen Cove, New York; Miami Beach, Florida; New York, New York; Roslyn Heights, New York; and Jamaica, New York.

55.     On or about August 15, 2013, Plaintiff Mitchell Cohen was diagnosed with kidney cancer in Roslyn, New York and subsequently underwent a right partial nephrectomy.

56.     Plaintiff Rodney Coleman is a citizen and resident of Bronx, New York. From approximately 1969 to 2025, Plaintiff Rodney Coleman was regularly exposed to PFAS through drinking water at residences in Bronx, New York; New York, New York; and Troy, New York.

57.     On or about 2008, Plaintiff Rodney Coleman was diagnosed with kidney cancer in New York, New York and subsequently underwent a right partial nephrectomy. On or about 2013, Plaintiff Rodney Coleman was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy. On or about 2023, Plaintiff Rodney Coleman was diagnosed with kidney cancer in New York, New York.

58.     Plaintiff Ronald Concessi is a citizen and resident of Rocky Point, New York. From approximately 1979 to 2025, Plaintiff Ronald Concessi was regularly exposed to PFAS through

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 19 of 60

drinking water at residences and workplaces in Rocky Point, New York; Patchogue, New York; Smithtown, New York; Farmingville, New York; and Northport, New York.

59.     On or about September 2018, Plaintiff Ronald Concessi was diagnosed with testicular cancer in Port Jefferson, New York and subsequently underwent a left orchiectomy and chemotherapy treatments.

60.     Plaintiff Ramon Cruz is a citizen and resident of Elma, New York. From approximately 1994 to 2024, Plaintiff Ramon Cruz was regularly exposed to PFAS through drinking water at residences in Buffalo, New York; Emmaus, Pennsylvania; and Allentown, Pennsylvania.

61.     On or about November 24, 2022, Plaintiff Ramon Cruz was diagnosed with testicular cancer in Buffalo, New York and subsequently underwent a right orchiectomy.

62.     Plaintiff Ricardo Cuadra is a citizen and resident of Wappingers Falls, New York. From approximately 1975 to 2025, Plaintiff Ricardo Cuadra was regularly exposed to PFAS through drinking water at residences in Wappingers Falls, New York; East Fishkill, New York; Bronx, New York; and Tuckahoe, New York.

63.     On or about 2006, Plaintiff Ricardo Cuadra was diagnosed with kidney cancer in Carmel Hamlet, New York and subsequently underwent a left nephrectomy.

64.     Plaintiff John Daum is a citizen and resident of Pine City, New York. From approximately 1996 to 2025, Plaintiff John Daum was regularly exposed to PFAS through drinking water at residences, workplaces, and schools in Elmira Heights, New York; Horseheads, New York; and Elmira, New York.

65.     On or about July 11, 2012, Plaintiff John Daum was diagnosed with testicular cancer in Elmira, New York and subsequently underwent a right orchiectomy, lymph node dissection, lung segmentectomy, and chemotherapy treatments. On or about December 12, 2013, Plaintiff John Daum was again diagnosed with testicular cancer in Buffalo, New York and subsequently underwent a

18

2:25-cv-10297-RMG          Date Filed 07/24/25          Entry Number 1-1          Page 20 of 60

thoracic cavity procedure and lung segmentectomy. On or about November 17, 2015, Plaintiff John Daum was again diagnosed with testicular cancer in Buffalo, New York and subsequently underwent a thoracic cavity resection and a tumor removal procedure.

66.     Plaintiff Michael Dejesus is a citizen and resident of Johnson City, New York. From approximately 1984 to 2025, Plaintiff Michael Dejesus was regularly exposed to PFAS through drinking water at residences in Johnson City, New York; Binghamton, New York; Endicott, New York; and Bronx, New York.

67.     On or about January 1, 2019, Plaintiff Michael Dejesus was diagnosed with kidney cancer in Binghamton, New York and subsequently underwent a right partial nephrectomy and chemotherapy treatments.

68.     Plaintiff Mattew Delgaudio is a citizen and resident of Johnson City, New York. From approximately 1989 to 2022, Plaintiff Mattew Delgaudio was regularly exposed to PFAS through drinking water at residences and schools in Clifton Park, New York; Cortland, New York; Schenectady, New York; and Scotia, New York.

69.     On or about March 2014, Plaintiff Mattew Delgaudio was diagnosed with testicular cancer in Albany, New York and subsequently underwent a right orchiectomy, chemotherapy, and radiation.

70.     Plaintiff Richard DelGrosso is a citizen and resident of Massapequa, New York. From approximately 1993 to 2025, Plaintiff Richard DelGrosso was regularly exposed to PFAS through drinking water at residences and schools in Massapequa, New York; Briarwood, New York; and Howard Beach, New York.

71.     On or about May 2020, Plaintiff Richard DelGrosso was diagnosed with testicular cancer in New York, New York and subsequently underwent a left orchiectomy and chemotherapy.

19

72.     Plaintiff Richard Dobbins is a citizen and resident of Massapequa, New York. From approximately 1962 to 2025, Plaintiff Richard Dobbins was regularly exposed to PFAS through drinking water at residences and workplaces in Massapequa Park, New York; Freeport, New York; and Massapequa, New York.

73.     On or about 2020, Plaintiff Richard Dobbins was diagnosed with kidney cancer in Success, New York and subsequently underwent a right partial nephrectomy.

74.     Plaintiff Edward Doin is a citizen and resident of Wynantskill, New York. From approximately 1997 to 2015, Plaintiff Edward Doin was regularly exposed to PFAS through drinking water at residences in Ballston Lake, New York; Westfield, New Jersey; and Rahway, New Jersey.

75.     On or about November 1, 2024, Plaintiff Edward Doin was diagnosed with kidney cancer in Albany, New York and subsequently underwent a left nephrectomy.

76.     Plaintiff Jason Dresdner is a citizen and resident of New York, New York. From approximately 1990 to 2025, Plaintiff Jason Dresdner was regularly exposed to PFAS through drinking water at residences in New York, New York and Bronx, New York.

77.     On or about 2013, Plaintiff Jason Dresdner was diagnosed with testicular cancer in Success, New York and subsequently underwent a left orchiectomy and chemotherapy.

78.     Plaintiff James Ebenau is a citizen and resident of Rego Park, New York. From approximately 1971 to 2025, Plaintiff James Ebenau was regularly exposed to PFAS through drinking water at residences in Rego Park, New York; Middle Village, New York; and Port Washington, New York.

79.     On or about June 2021, Plaintiff James Ebenau was diagnosed with kidney cancer in New York, New York and subsequently underwent a right partial nephrectomy. On or about 2024, Plaintiff James Ebenau was also diagnosed with thyroid disease in Rego Park, New York.

20

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 22 of 60

80.     Plaintiff Michael Edwards is a citizen and resident of Troy, New York. From approximately 1972 to 2025, Plaintiff Michael Edwards was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Troy, New York; Watervliet, New York; Rensselaer, New York; Albany, New York; and Loudonville, New York.

81.     On or about 2019, Plaintiff Michael Edwards was diagnosed with kidney cancer in Troy, New York and subsequently underwent a bilateral partial nephrectomy and immunotherapy. On or about December 2019, Plaintiff Michael Edwards suffered from neutropenic colitis as a result of his kidney cancer treatment. On or about March 30, 2021, Plaintiff Michael Edwards was diagnosed with thyroid disease in Troy, New York.

82.     Plaintiff Omar Estrada Gonzalez is a citizen and resident of White Plains, New York. From approximately 2002 to 2012, Plaintiff Omar Estrada Gonzalez was regularly exposed to PFAS through drinking water at residences in White Plains, New York; West Harrison, New York; Dallas, Texas; and North Bay Village, Florida.

83.     On or about September 27, 2024, Plaintiff Omar Estrada Gonzalez was diagnosed with testicular cancer in New York, New York and subsequently underwent a right orchiectomy.

84.     Plaintiff Anthony Fazio is a citizen and resident of Lindenhurst, New York. From approximately 1973 to 2024, Plaintiff Anthony Fazio was regularly exposed to PFAS through drinking water at residences and workplaces in Manhattan, New York; Amityville, New York; Lindenhurst, New York; and South Richmond Hill, New York.

85.     On or about January 2020, Plaintiff Anthony Fazio was diagnosed with kidney cancer in Binghamton, New York and subsequently underwent a left partial nephrectomy.

86.     Plaintiff David Fisher is a citizen and resident of Mayfield, New York. From approximately 1997 to 2022, Plaintiff David Fisher was regularly exposed to PFAS through drinking water at residences in Gloversville, New York.

21

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 23 of 60

87.     On or about 2024, Plaintiff David Fisher was diagnosed with clear cell renal carcinoma in Albany, New York and subsequently underwent related treatment.

88.     Plaintiff Jamie Fodor is a citizen and resident of Tomkins Cove, New York. From approximately 1968 to 2025, Plaintiff Jamie Fodor was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Garnerville, New York; Nyack, New York; Blauvelt, New York; Stony Point, New York; Stony Brook, New York; and Tomkins Cove, New York.

89.     On or about 2007, Plaintiff Jamie Fodor was diagnosed with kidney cancer in Nyack, New York and subsequently underwent a partial nephrectomy. On or about 2013, Plaintiff Jamie Fodor was again diagnosed with kidney cancer in New York, New York and subsequently underwent a partial nephrectomy.

90.     Plaintiff Molly Fontana is a citizen and resident of Auburn, New York. From approximately 1990 to 2024, Plaintiff Molly Fontana was regularly exposed to PFAS through drinking water at residences in Skaneateles, New York; Richmond, Texas; and Houston, Texas.

91.     On or about 2024, Plaintiff Molly Fontana was diagnosed with kidney cancer in Syracuse, New York and subsequently underwent a right partial nephrectomy.

92.     Plaintiff Deborah Foringer-Merkle is a citizen and resident of New Woodstock, New York. From approximately 1974 to 1989, Plaintiff Deborah Foringer-Merkle was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Manlius, New York; Riverside, California; Long Beach, California; Moreno Valley, California; and San Bernardino, California.

93.     On or about May 2015, Plaintiff Deborah Foringer-Merkle was diagnosed with kidney cancer in Albany, New York and subsequently underwent a right nephrectomy.

94.     Plaintiff Mitchell Frasier is a citizen and resident of Burnt Hills, New York. From approximately 1973 to 2025, Plaintiff Mitchell Frasier was regularly exposed to PFAS through

22

drinking water at residences and workplaces in Burnt Hills, New York; Charlton, New York; Ballston Spa, New York; Lake George, New York; Oak Grove, Kentucky; and Aberdeen, Maryland.

95.     On or about April 2014, Plaintiff Mitchell Frasier was diagnosed with kidney cancer in Schenectady, New York and subsequently underwent a right nephrectomy and lymph node dissection. On or about 2017, Plaintiff Mitchell Frasier was diagnosed with thyroid disease in Albany, New York.

96.     Plaintiff Chelsea Fyre is a citizen and resident of Albany, New York. From approximately 1982 to 2015, Plaintiff Chelsea Fyre was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Schenectady, New York.

97.     On or about December 2022, Plaintiff Chelsea Fyre was diagnosed with kidney cancer in Albany, New York and subsequently underwent a left partial nephrectomy.

98.     Plaintiff Allan Gallaway is a citizen and resident of New York, New York. From approximately 1939 to 2025, Plaintiff Allan Gallaway was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Flushing, New York; Brooklyn, New York; Fort Drum, New York; and Pemberton Township, New Jersey.

99.     On or about 2018, Plaintiff Allan Gallaway was diagnosed with kidney cancer in New York, New York and subsequently underwent a right partial nephrectomy.

100.    Plaintiff Felice Gambino is a citizen and resident of Newburgh, New York. From approximately 1965 to 2025, Plaintiff Felice Gambino was regularly exposed to PFAS through drinking water at residences in Newburgh, New York and New Windsor, New York.

101.    On or about October 2023, Plaintiff Felice Gambino was diagnosed with kidney cancer in Newburgh, New York and subsequently underwent a left partial nephrectomy.

102.    Plaintiff Louis Gardiner is a citizen and resident of Lockport, New York. From approximately 1975 to 2010, Plaintiff Louis Gardiner was regularly exposed to PFAS through

drinking water at residences, schools, and workplaces in Niagara Falls, New York; Kailua, Hawaii; Camp Pendleton North, California; and Camp Lejeune, North Carolina.

103.    On or about 2020, Plaintiff Louis Gardiner was diagnosed with kidney cancer in Buffalo, New York and subsequently underwent a left partial nephrectomy.

104.    Plaintiff Frank George is a citizen and resident of Brewerton, New York. From approximately 1974 to 2025, Plaintiff Frank George was regularly exposed to PFAS through drinking water at residences and workplaces in Brewerton, New York; Rome, New York; North Lauderdale, Florida; and Lauderhill, Florida.

105.    On or about June 2020, Plaintiff Frank George was diagnosed with testicular cancer in New Hartford, New York and subsequently underwent a left orchiectomy and chemotherapy.

106.    Plaintiff Frank Gerace is a citizen and resident of Islip Terrace, New York. From approximately 1965 to 2025, Plaintiff Frank Gerace was regularly exposed to PFAS through drinking water at residences and workplaces in Patchogue, New York; Saint James, New York; and Islip Terrace, New York.

107.    On or about 2009, Plaintiff Frank Gerace was diagnosed with testicular cancer in Bay Shore, New York and subsequently underwent a left orchiectomy.

108.    Plaintiff Joseph Gillespie is a citizen and resident of Binghamton, New York. From approximately 1983 to 2003, Plaintiff Joseph Gillespie was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Endicott, New York; Owego, New York; Binghamton, New York; Peoria, Illinois; and Citrus Heights, California.

109.    On or about February 26, 2025, Plaintiff Joseph Gillespie was diagnosed with kidney cancer in Syracuse, New York and underwent related treatment.

110.    Plaintiff Gregory Godfrey is a citizen and resident of Oneida, New York. From approximately 1983 to 2025, Plaintiff Gregory Godfrey was regularly exposed to PFAS through

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 26 of 60

drinking water at residences and workplaces in Oneida, New York; East Syracuse, New York; New York Mills, New York; and Prospect, Pennsylvania.

111.    On or about 2018, Plaintiff Gregory Godfrey was diagnosed with kidney cancer in Syracuse, New York and subsequently underwent a right nephrectomy and cystectomy.

112.    Plaintiff Joanne Golding is a citizen and resident of Colonie, New York. From approximately 1987 to 2025, Plaintiff Joanne Golding was regularly exposed to PFAS through drinking water at residences in Colonie, New York; Phoenix, Arizona; and Albany, New York.

113.    On or about 2018, Plaintiff Joanne Golding was diagnosed with kidney cancer in Albany, New York and subsequently underwent a partial nephrectomy. On or about 2008, Plaintiff Joanne Golding was diagnosed with thyroid disease in Latham, New York.

114.    Plaintiff Michael Halavik is a citizen and resident of Endicott, New York. From approximately 1971 to 2025, Plaintiff Michael Halavik was regularly exposed to PFAS through drinking water at residences and workplaces in Binghamton, New York; Endicott, New York; Fowler, Colorado; Johnson City, New York; Fort Carson, Texas; and Fort Knox, Kentucky.

115.    On or about November 2022, Plaintiff Michael Halavik was diagnosed with kidney cancer in Binghamton, New York and subsequently underwent a right partial nephrectomy.

116.    Plaintiff Matthew Heady is a citizen and resident of Hadley, New York. From approximately 2001 to 2025, Plaintiff Matthew Heady was regularly exposed to PFAS through drinking water at residences in Hadley, New York; Peekskill, New York; and Queensbury, New York.

117.    On or about 2018, Plaintiff Matthew Heady was diagnosed with testicular cancer in Saratoga Springs, New York and subsequently underwent a right orchiectomy and chemotherapy.

118.    Plaintiff David Helfrich is a citizen and resident of Middletown, New York. From approximately 1979 to 2025, Plaintiff David Helfrich was regularly exposed to PFAS through

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 27 of 60

drinking water at residences and workplaces in Cuddebackville, New York; Middletown, New York; Waxhaw, North Carolina; Matthews, North Carolina; and Charlotte, North Carolina.

119.    On or about 2015, Plaintiff David Helfrich was diagnosed with kidney cancer in Matthews, North Carolina and subsequently underwent a right partial nephrectomy.

120.    Plaintiff Aaron Herrick is a citizen and resident of Saratoga Springs, New York. From approximately 2001 to 2025, Plaintiff Aaron Herrick was regularly exposed to PFAS through drinking water at residences in Saratoga Springs, New York; South Glens Falls, New York; Queensbury, New York; and Mesa, Arizona.

121.    On or about April 1, 2022, Plaintiff Aaron Herrick was diagnosed with testicular cancer in Glens Falls, New York and subsequently underwent a right orchiectomy.

122.    Plaintiff Kishon Hickman is a citizen and resident of Otisville, New York. From approximately 1979 to 2022, Plaintiff Kishon Hickman was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Bronx, New York; and Middletown, New York.

123.    On or about April 2018, Plaintiff Kishon Hickman was diagnosed with kidney cancer in Sleepy Hollow, New York and subsequently underwent a right partial nephrectomy.

124.    Plaintiff Joanne Iolonardi is a citizen and resident of White Plains, New York. From approximately 1954 to 2017, Plaintiff Joanne Iolonardi was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Brooklyn, New York; Bronx, New York; Tuckahoe, New York; New York, New York.

125.    On or about January 1, 2019, Plaintiff Joanne Iolonardi was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy.

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 28 of 60

126.    Plaintiff Kamell Jenkins is a citizen and resident of Staten Island, New York. From approximately 1974 to 2025, Plaintiff Kamell Jenkins was regularly exposed to PFAS through drinking water at residences and workplaces in Staten Island, New York.

127.    On or about January 2023, Plaintiff Kamell Jenkins was diagnosed with kidney cancer in Staten Island, New York and subsequently underwent a right nephrectomy and immunotherapy.

128.    Plaintiff Barbara Jones is a citizen and resident of Middletown, New York. From approximately 1984 to 2025, Plaintiff Barbara Jones was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Middletown, New York.

129.    On or about 2024, Plaintiff Barbara Jones was diagnosed with kidney cancer in Middletown, New York and subsequently underwent a right partial nephrectomy. On or about 2005, Plaintiff Barbara Jones was diagnosed with thyroid disease in Middletown, New York.

130.    Plaintiff Carole Kanner is a citizen and resident of Bayside, New York. From approximately 1952 to 2025, Plaintiff Carole Kanner was regularly exposed to PFAS through drinking water at residences and workplaces in Bayside, New York; Oakland Gardens, New York; Ridgewood, New York; and Fresh Meadows, New York.

131.    On or about 2008, Plaintiff Carole Kanner was diagnosed with kidney cancer in Flushing, New York and subsequently underwent a right nephrectomy. On or about 2020, Plaintiff Carole Kanner was diagnosed with thyroid disease in New Hyde Park, New York.

132.    Plaintiff Barbara Kelly is a citizen and resident of Fort Edward, New York. From approximately 1950 to 2025, Plaintiff Barbara Kelly was regularly exposed to PFAS through drinking water at residences and schools in Fort Edward, New York; South Glens Falls, New York; and Westfield, New Jersey.

133.    On or about 2006, Plaintiff Barbara Kelly was diagnosed with kidney cancer in Albany, New York and subsequently underwent a left nephrectomy.

27

134.    Plaintiff David Knights is a citizen and resident of Mahopac, New York. From approximately 1963 to 2025, Plaintiff David Knights was regularly exposed to PFAS through drinking water at residences and workplaces in Mahopac, New York; Woodcliff Lake, New Jersey; Mahwah, New Jersey; New City, New York; Bardonia, New York; Hackensack, New Jersey; and Paramus, New Jersey.

135.    On or about 2021, Plaintiff David Knights was diagnosed with kidney cancer in Mount Kisco, New York and subsequently underwent a biopsy and immunotherapy.

136.    Plaintiff Mary Koury is a citizen and resident of Sauquoit, New York. From approximately 1988 to 2025, Plaintiff Mary Koury was regularly exposed to PFAS through drinking water at residences in Sauquoit, New York and Utica, New York.

137.    On or about 2016, Plaintiff Mary Koury was diagnosed with kidney cancer in New Hartford, New York and subsequently underwent a cryoablation.

138.    Plaintiff Susan Krantz is a citizen and resident of Buffalo, New York. From approximately 1957 to 2025, Plaintiff Susan Krantz was regularly exposed to PFAS through drinking water at residences in Tonawanda, New York; Buffalo, New York; and Town of Tonawanda, New York.

139.    On or about June 1, 2021, Plaintiff Susan Krantz was diagnosed with kidney cancer in Buffalo, New York and subsequently underwent a right nephrectomy. On or about February 1, 2022, Plaintiff Susan Krantz was diagnosed with thyroid disease in Amherst, New York.

140.    Plaintiff John Krause is a citizen and resident of Wantagh, New York. From approximately 1961 to 2025, Plaintiff John Krause was regularly exposed to PFAS through drinking water at residences in Wantagh, New York; East Meadow, New York; Shirley, New York; and Hempstead, New York.

141.    On or about April 5, 2005, Plaintiff John Krause was diagnosed with kidney cancer in Oceanside, New York and subsequently underwent a right nephrectomy.

142.    Plaintiff James Krom is a citizen and resident of Schenectady, New York. From approximately 1978 to 2001, Plaintiff James Krom was regularly exposed to PFAS through drinking water at residences and schools in Schenectady, New York.

143.    On or about 2009, Plaintiff James Krom was diagnosed with testicular cancer in Pittsfield, Massachusetts and subsequently underwent a right orchiectomy and chemotherapy.

144.    Plaintiff Bruce Kushnick is a citizen and resident of Howard Beach, New York. From approximately 1953 to 2025, Plaintiff Bruce Kushnick was regularly exposed to PFAS through drinking water at residences in Howard Beach, New York; North Bellmore, New York; Fresh Meadows, New York; Brooklyn, New York.

145.    On or about 2019, Plaintiff Bruce Kushnick was diagnosed with kidney cancer in Brooklyn, New York and subsequently underwent a tumor removal procedure.

146.    Plaintiff Tara Lalor is a citizen and resident of Highland Mills, New York. From approximately 2002 to 2025, Plaintiff Tara Lalor was regularly exposed to PFAS through drinking water at residences in Highland Mills, New York; Bronx, New York; Dobbs Ferry, New York; Tarrytown, New York; Wappingers Falls, New York; Raleigh, North Carolina; Wilmington, North Carolina; Clayton, North Carolina; and Garner, North Carolina.

147.    On or about September 2017, Plaintiff Tara Lalor was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy.

148.    Plaintiff Michele LaMantia is a citizen and resident of Staten Island, New York. From approximately 1962 to 2025, Plaintiff Michele LaMantia was regularly exposed to PFAS through drinking water at residences in Staten Island, New York.

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 31 of 60

149.     On or about October 2022, Plaintiff Michele LaMantia was diagnosed with kidney cancer in Hackensack, New Jersey and subsequently underwent a left partial nephrectomy.

150.     Plaintiff Anthony Lee is a citizen and resident of Plattsburgh, New York. From approximately 1968 to 2021, Plaintiff Anthony Lee was regularly exposed to PFAS through drinking water at residences and workplaces in Plattsburgh, New York; Poughkeepsie, New York; Jamaica, New York; New York, New York; Natural Bridge, New York; Fort Moore, Georgia; and Wrightstown, New Jersey.

151.     On or about 2021, Plaintiff Anthony Lee was diagnosed with kidney cancer in Albany, New York and subsequently underwent a right nephrectomy.

152.     Plaintiff Michael Legene is a citizen and resident of Franklin Square, New York. From approximately 2005 to 2025, Plaintiff Michael Legene was regularly exposed to PFAS through drinking water at residences in Franklin Square, New York; Elmont, New York; Land O Lakes, Florida; and Tampa, Florida.

153.     On or about 2013, Plaintiff Michael Legene was diagnosed with kidney cancer in Rockville Centre, New York and subsequently underwent a right partial nephrectomy.

154.     Plaintiff Richard Leibowitz is a citizen and resident of Sterling Forest, New York. From approximately 1984 to 2025, Plaintiff Richard Leibowitz was regularly exposed to PFAS through drinking water at residences and workplaces in Monroe, New York; Highland Falls, New York; Warwick, New York; Spring Valley, New York; and West Point, New York.

155.     On or about 2008, Plaintiff Richard Leibowitz was diagnosed with kidney cancer in Albany, New York and subsequently underwent a right partial nephrectomy.

156.     Plaintiff Robert Lippman is a citizen and resident of Saratoga Springs, New York. From approximately 1979 to 2025, Plaintiff Robert Lippman was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in New York, New York; Ballston Spa, New

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 32 of 60

York; New Paltz, New York; Saratoga Springs, New York; Gansevoort, New York; Glens Falls, New York; Setauket-East Setauket, New York; and Stony Brook, New York.

157.    On or about June 2021, Plaintiff Robert Lippman was diagnosed with kidney cancer in White Plains, New York and subsequently underwent a left nephrectomy.

158.    Plaintiff Alice Lynady is a citizen and resident of Orangeburg, New York. From approximately 1964 to 2025, Plaintiff Alice Lynady was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Sleepy Hollow, New York; Orangeburg, New York; and Pearl River, New York.

159.    On or about June 1, 2024, Plaintiff Alice Lynady was diagnosed with kidney cancer in New York, New York and subsequently underwent radiation treatment.

160.    Plaintiff Halina Malinowski is a citizen and resident of Staten Island, New York. From approximately 1972 to 2025, Plaintiff Halina Malinowski was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Staten Island, New York; Bernards, New Jersey; New York, New York; and Flushing, New York.

161.    On or about December 28, 2022, Plaintiff Halina Malinowski was diagnosed with kidney cancer in Staten Island, New York and subsequently underwent a right nephrectomy and immunotherapy.

162.    Plaintiff Peter Manfredi is a citizen and resident of Rochester, New York. From approximately 1984 to 2025, Plaintiff Peter Manfredi was regularly exposed to PFAS through drinking water at residences and workplaces in Rochester, New York.

163.    On or about February 2021, Plaintiff Peter Manfredi was diagnosed with testicular cancer in Rochester, New York and subsequently underwent a left orchiectomy and chemotherapy.

164.    Plaintiff Michele Mapes is a citizen and resident of Endicott, New York. From approximately 1980 to 2025, Plaintiff Michele Mapes was regularly exposed to PFAS through

31

drinking water at residences and workplaces in Vestal, New York; Endicott, New York; and Endwell, New York.

165.    On or about January 30, 2016, Plaintiff Michele Mapes was diagnosed with kidney cancer in Johnson City, New York and subsequently underwent a left partial nephrectomy.

166.    Plaintiff Michael Markowski is a citizen and resident of Albany, New York. From approximately 1963 to 2025, Plaintiff Michael Markowski was regularly exposed to PFAS through drinking water at residences and workplaces in Staten Island, New York; and Fort Pierce, Florida.

167.    On or about December 1, 2019, Plaintiff Michael Markowski was diagnosed with kidney cancer in Staten Island, New York and subsequently underwent a left partial nephrectomy.

168.    Plaintiff Debra Martin is a citizen and resident of Staten Island, New York. From approximately 1960 to 2025, Plaintiff Debra Martin was regularly exposed to PFAS through drinking water at residences in Massapequa, New York; Staten Island, New York; and New York, New York.

169.    On or about 2005, Plaintiff Debra Martin was diagnosed with ulcerative colitis in Staten Island, New York. On or about 2019, Plaintiff Debra Martin was diagnosed with kidney cancer in New York, New York and subsequently underwent a right partial nephrectomy. On or about 2020, Plaintiff Debra Martin was diagnosed with thyroid disease in Staten Island, New York.

170.    Plaintiff David McAllister is a citizen and resident of Watertown, New York. From approximately 1990 to 2025, Plaintiff David McAllister was regularly exposed to PFAS through drinking water at residences and workplaces in Watertown, New York; Natural Bridge, New York; Oak Grove, Kentucky; Pulaski County, Missouri; and Lawton, Oklahoma.

171.    On or about July 2023, Plaintiff David McAllister was diagnosed with kidney cancer in Watertown, New York and subsequently underwent a right nephrectomy.

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 34 of 60

172. Plaintiff Steven McCarville is a citizen and resident of East Aurora, New York. From approximately 1964 to 2015, Plaintiff Steven McCarville was regularly exposed to PFAS through drinking water at residences in Orchard Park, New York.

173. On or about September 2007, Plaintiff Steven McCarville was diagnosed with testicular cancer in Cheektowaga, New York and subsequently underwent a left orchiectomy and radiation.

174. Plaintiff Ronald McGee is a citizen and resident of Westbury, New York. From approximately 1986 to 2025, Plaintiff Ronald McGee was regularly exposed to PFAS through drinking water at residences and workplaces in Carle Place, New York and Westbury, New York.

175. On or about August 2020, Plaintiff Ronald McGee was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy.

176. Plaintiff James McKiernan is a citizen and resident of Bronx, New York. From approximately 2013 to 2022, Plaintiff James McKiernan was regularly exposed to PFAS through drinking water at residences in Bronx, New York.

177. On or about January 2018, Plaintiff James McKiernan was diagnosed with testicular cancer in Yonkers, New York and subsequently underwent a right orchiectomy. On or about January 2019, Plaintiff James McKiernan was again diagnosed with testicular cancer in Yonkers, New York and subsequently underwent chemotherapy.

178. Plaintiff Richard Meli is a citizen and resident of Bronx, New York. From approximately 1946 to 2025, Plaintiff Richard Meli was regularly exposed to PFAS through drinking water at residences and workplaces in Bronx, New York; Rockaway Park, New York; Wrightstown, New Jersey; Camp Springs, Maryland; and San Antonio, Texas.

179. On or about 2023, Plaintiff Richard Meli was diagnosed with kidney cancer in White Plains, New York and subsequently underwent a left nephrectomy and immunotherapy.

180.     Plaintiff Hermann Mendez is a citizen and resident of New York, New York. From approximately 1980 to 2025, Plaintiff Hermann Mendez was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; East Hampton, New York; Kingston, New York; and Brooklyn, New York.

181.     On or about December 19, 2024, Plaintiff Hermann Mendez was diagnosed with kidney cancer in New York, New York and subsequently underwent chemotherapy and immunotherapy.

182.     Plaintiff James Metzger is a citizen and resident of Albany, New York. From approximately 1968 to 2025, Plaintiff James Metzger was regularly exposed to PFAS through drinking water at residences in Staten Island, New York; Morristown, New Jersey; and Brooklyn, New York.

183.     On or about March 2013, Plaintiff James Metzger was diagnosed with kidney cancer in Staten Island, New York and subsequently underwent a left partial nephrectomy.

184.     Plaintiff Michael Miller is a citizen and resident of New Hyde Park, New York. From approximately 1964 to 1982, Plaintiff Michael Miller was regularly exposed to PFAS through drinking water at residences in New Hyde Park, New York.

185.     On or about November 1, 2022, Plaintiff Michael Miller was diagnosed with kidney cancer in Garden City, New York and subsequently underwent a left nephrectomy.

186.     Plaintiff Christopher Miller is a citizen and resident of Albany, New York. From approximately 1990 to 2020, Plaintiff Christopher Miller was regularly exposed to PFAS through drinking water at residences and workplaces in Delmar, New York; Slingerlands, New York; Selkirk, New York; Glenmont, New York; Fort Irwin, California; Fort Cavazos, Texas; and Fort Moore, Georgia.

187.    On or about June 2024, Plaintiff Christopher Miller was diagnosed with kidney cancer in Albany, New York and subsequently underwent a left nephrectomy.

188.    Plaintiff Michael Molinelli is a citizen and resident of Middletown, New York. From approximately 1993 to 2015, Plaintiff Michael Molinelli was regularly exposed to PFAS through drinking water at residences and workplaces in Woodbury, New York and Bronx, New York.

189.    On or about 2014, Plaintiff Michael Molinelli was diagnosed with testicular cancer in Middletown, New York and subsequently underwent a left orchiectomy.

190.    Plaintiff Gary Mueller is a citizen and resident of Brewster, New York. From approximately 1981 to 2025, Plaintiff Gary Mueller was regularly exposed to PFAS through drinking water at residences and workplaces in Brewster, New York; Bedford Hills, New York; Yorktown Heights, New York; Ossining, New York; Somers, New York; Valley Cottage, New York; and Croton -on- Hudson, New York.

191.    On or about 2010, Plaintiff Gary Mueller was diagnosed with kidney cancer in Harrison, New York and subsequently underwent a left nephrectomy.

### B. **Defendants**

192.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

193.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

194.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

195.     **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

196.     **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

197.     **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

198.     **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

199.     **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

200.     **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

201.     **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin

54143.

202.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

203.     **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

204.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

205.     **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

206.     **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

207.     **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

208.     Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way

of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

209.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

210.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

211.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

212.    **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

213.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

214.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

38

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 40 of 60

215. **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

216. **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

217. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

218. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

219. Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

220. All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of New York.

221. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 41 of 60

222.   The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## III.   JURISDICTION & VENUE

223.   This Court has jurisdiction over Defendants pursuant to CPLR §§ 302(a)(1)-(3).

224.   Venue is appropriate in this county pursuant to CPLR § 503 because several Plaintiffs reside in this county, many of the affected properties from which Plaintiffs were exposed to drinking water contaminated by PFOA and PFOS through use of AFFF are located in this county, and a substantial part of the events giving rise to the claims occurred in this county.

## IV.   FACTUAL ALLEGATIONS

### A.   The PFAS Contaminants at Issue: PFOA and PFOS

225.   Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

226. PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

227. PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

228. Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

229. Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

230. Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025); EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra. See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

41

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 43 of 60

231.    The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

232.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[5]

233.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.  The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B.   Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

234.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first

---

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).
[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at  https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

235. Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

236. The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

237. When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters). When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

238. Notably, AFFF can be made without PFOA and PFOS. Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

239. Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

## C. **Defendants' Knowledge of PFOA and PFOS Hazards**

240.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

241.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

242.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all exposures had ceased.[7]

243.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

244.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had

---

[7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

245.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

246.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.   The company stopped producing PFOA at approximately the same time.

247.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

248.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

249.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to

---

[8] *See* DuPont, *C-8 Blood Sampling Results,* available at
https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC4 9KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed March 11, 2025).

[9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), Office of Minnesota Attorney General, Exhibit List, No. 1313,-available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed March 11, 2025).

the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

250.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

251.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13]  By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

252.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its

---

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

[11] *Id.*

[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

[13] *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed March 11, 2025).

perfluorinated chemical liabilities into the lap of the new Chemours.

253.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

254.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the users of AFFF of the dangers to human health that result from the standard use and disposal of these products; negligently designed products containing or degrading into PFOA and/or PFOS; and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

255.    Further, Defendants failed to disclose to environmental regulators and the general public the likely existence of and health risks to the public caused by widespread PFOA and PFOS contamination in drinking water supplies across the country as a result of AFFF usage.

256.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

257.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such

products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

### D.  The Impact of PFOA and PFOS on the Plaintiffs

258.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

259.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

260.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

261.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

262.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

      a.      Plaintiffs suffered physical pain and mental anguish;

      b.      Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

      c.      Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognosis.

### FIRST CAUSE OF ACTION
#### (Strict Products Liability Based on Defective Design)

263.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

264.    Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

265.    All of Defendants' AFFF products were manufactured for placement into trade or commerce.

2:25-cv-10297-RMG     Date Filed 07/24/25     Entry Number 1-1     Page 50 of 60

266.    Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

267.    Each Defendant represented, asserted, claimed and warranted that its product could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

268.    Defendants knew, or should have known, that AFFF and their Fluorosurfactant Products would be used without inspection for defects, and if any inspection were performed, that the defects would not be discovered with the exercise of reasonable diligence.

269.    Defendants' AFFF and Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial change in the condition of such products.

270.    AFFF was distributed and sold in the manner intended or reasonably foreseen by the Defendants, or as should have been reasonably foreseen by Defendants.

271.    When Defendants placed AFFF products into the stream of commerce, they were defective, unreasonably dangerous, and not reasonably fit, suitable, and safe for their intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

    a.    When used as intended and directed, PFOA and PFOS escape from AFFF products;

    b.    Users and bystanders are exposed to PFOA and PFOS by inhalation, ingestion, or through skin absorption;

    c.    PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

    d.    PFOA and/or PFOS persist and bioaccumulate in the human body; and

    e.    PFOS and PFOA are associated with serious health risks and medical conditions.

272.     AFFF containing PFOA and/or PFOS poses greater danger to human health than would be expected by ordinary persons such as Plaintiffs and the general public.

273.     At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent Plaintiffs' injuries.

274.     The risks posed by PFOA/PFOS-containing AFFF far outweigh the products' utility as a flame-control chemical.

275.     The likelihood that Plaintiffs would be exposed to PFOA and/or PFOS, and the gravity of that exposure, far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

276.     Had Plaintiffs known of these dangers, they would not have purchased AFFF containing PFOA and PFOS or products contaminated therefrom.

277.     Notwithstanding their knowledge of the risk of AFFF containing PFOA and PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold AFFF containing PFOA and PFOS; (2) issued instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the users of AFFF and the general public, including Plaintiffs, of the dangers to human health that result from the standard use and disposal of these products; negligently designed products containing or degrading into PFOA and/or PFOS; and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

278.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

279.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

280.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious disregard for the health and safety of others, including Plaintiffs.

### SECOND CAUSE OF ACTION

#### (Strict Products Liability Based on Failure to Warn)

281.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

282.    Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

283.    All of Defendants' AFFF products were manufactured for placement into trade or commerce.

284.    Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

285.    As manufacturers, designers, distributors, suppliers, sellers and marketers of PFOA/PFOS-containing AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiffs, customers, users, the public, and public officials.

51

2:25-cv-10297-RMG    Date Filed 07/24/25    Entry Number 1-1    Page 53 of 60

286.    Defendants knew that AFFF containing PFOA and PFOS would be purchased transported, stored, handled, and used without notice of the hazards which PFOA/PFOS pose to human health

287.    Defendants breached their duty to warn by unreasonably failing to provide warnings about potential and/or actual exposure to PFOA and/or PFOS, despite the fact that Defendants knew that these contaminants were in AFFF.

288.    Plaintiffs were exposed to PFOA/PFOS through Defendants' Fluorosurfactant Products including AFFF.

289.    Plaintiffs and emergency fire personnel used Fluorosurfactant Products in a reasonably foreseeable manner and without substantial change in the condition of the products.

290.    Despite the known and/or foreseeable human health hazards associated with exposure to PFOA/PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate those hazards.

291.    In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA/PFOS contaminants or otherwise.

292.    Therefore, as a direct and proximate result of Defendants' failure to warn, Plaintiffs have been significantly harmed.

293.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious disregard for the health and safety of others, including Plaintiffs.

## THIRD CAUSE OF ACTION

### (Negligence)

294.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

295.   As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers and handlers of AFFF containing PFOA and PFOS, Defendants owed a duty to Plaintiffs and all persons whom Defendants' products might foreseeably harm to exercise due care in the handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of products containing PFOA/PFOS.

296.   Despite the fact that Defendants knew that PFOA and PFOS are bioaccumulative, toxic, and can cause testicular cancer, kidney cancer, ulcerative colitis, thyroid disease, and other serious human health effects, Defendants negligently:

   a.      designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing products;

   b.      issued instructions on how AFFF products should be used and disposed of, thus improperly permitting human exposure to PFOA and/or PFOS;

   c.      failed to recall and/or warn the users of AFFF products of the dangers of human exposure associated with intended use and disposal of this product; and

   d.      failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS regarding the proper use, handling, and disposal of products containing this toxic chemical, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF products.

297.   As a direct and proximate result of Defendants' negligence, Plaintiffs have been significantly harmed as set forth in detail above.

298.   Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described

acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious disregard for the health and safety of others, including Plaintiffs.

## **FOURTH CAUSE OF ACTION**

### **(Fraudulent Transfer against DuPont and Chemours only)**

299.     Plaintiffs reallege and reaffirm each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

300.     Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

301.     Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

302.     Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

303.     In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

304.     Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

2:25-cv-10297-RMG        Date Filed 07/24/25        Entry Number 1-1        Page 56 of 60

305.    As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

306.    DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

307.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiffs, that have been damaged as a result of DuPont's actions as described in this Complaint.

308.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

309.    Plaintiffs seek to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## TOLLING OF THE STATUTE OF LIMITATIONS

310.    Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

**<u>Discovery Rule Tolling</u>**

311.    Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

312.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

313.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

314.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

315. Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

## **Fraudulent Concealment**

316. Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF products.

317. This fraudulent concealment continues to the present day.

318. Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes of limitations have also been tolled.

## **Estoppel**

319. Defendants were under a continuous duty to consumers, end users, and other persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide truthful and reliable safety information concerning their products and the risks associated with their use, as well as exposure to AFFF.

320. Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively concealed important safety information and warnings concerning AFFF and the health risks associated with the same.

321. Wherefore, Defendants are estopped from relying on any statute of limitations in defense of this action.

## **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others;

2. Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

3. Punitive damages;

4. Consequential damages;

5. Pre-judgment and post-judgment interest;

6. Attorney's fees; and

7. Any other and further relief as the Court deems just, proper, and equitable.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by a jury on all of the triable issues of this complaint.

Dated: June 5, 2025

Respectfully submitted,

By: */s/ Rebecca Currier*
**BARON & BUDD, P.C.**
Rebecca Currier
NY Attorney Registration No.: 4950606
rcurrier@baronbudd.com
Holly Werkema (TX Bar No. 24081202)
*(Pro Hac Vice Forthcoming)*
hwerkema@baronbudd.com
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Fax: (214) 279-9915

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
Philip F. Cossich, Jr. (LA Bar No. 1788)
*(Pro Hac Vice Forthcoming)*
pcossich@cossichlaw.com
Christina M. Cossich (LA Bar No. 32407)
*(Pro Hac Vice Forthcoming)*
ccossich@cossichlaw.com

58

8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

*Attorneys for Plaintiff*